IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ALLISON R. FRICK,

            Plaintiff,

vs.                                        Case No. 16-1271-SAC


NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

            Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

their previous work, they are determined not to be disabled.  If
the claimant survives step four, the fifth and final step
requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).  At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On September 12, 2014, administrative law judge (ALJ) Susan
W. Conyers issued her decision (R. at 21-36).  Plaintiff alleges
that she has been disabled since February 4, 2011 (R. at 21).

Plaintiff is insured for disability insurance benefits through December 31, 2014 (R. at 23). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 23). At step two, the ALJ found that plaintiff had severe impairments (R. at 23). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 24). After determining plaintiff's RFC (R. at 27), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 35). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 35-36). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 36).

**III. Are the ALJ's mental RFC findings supported by substantial evidence?**

In her decision, the ALJ found that plaintiff's mental RFC limited her to performing simple and routine tasks consistent with unskilled work, involving no more than occasional superficial interaction with the general public and co-workers (R. at 27). In making these mental RFC findings, the ALJ gave significant weight to the opinions of two non-examining medical sources (Dr. Cohen [8/5/2013] and Dr. Bergmann-Harms [6/4/2013]) who reviewed the record and set out mental RFC findings for the plaintiff (R. at 33, 96-97, 100-102, 111-112, 116-117).

Also in the record was a mental RFC form, dated June 2014, and signed by Stefanie Griggs, LSCSW, and Dr. Mittal, a psychiatrist, who were plaintiff's treatment providers. They opined that plaintiff was seriously limited in 1 category, was unable to meet competitive standards in 10 categories, and that plaintiff had no useful ability to function in 7 categories (R. at 737-738).

The ALJ considered this report, but gave it "very little weight" (R. at 34). Although the ALJ noted that it was co-signed by Ms. Griggs' supervising physician, the ALJ stated that:

> …there is no evidence that this source ever treated or examined the claimant, no indication this source provided any opinions or insight into this opinion, and no indication this opinion actually reflects the opinion of anyone other than Ms. Griggs, despite the second signature. As a result, this opinion was not treated as a medical source opinion from a treating source, and controlling weight was not considered.

(R. at 34).

As a preliminary matter, defendant contends that this issue (the ALJ's finding that this opinion would not be treated as an opinion from Dr. Mittal, a medical source opinion from a treating source) was not directly raised by the plaintiff, and is therefore waived. Plaintiff, in her brief, stated that the ALJ failed to properly consider all of plaintiff's mental

impairments in determining her RFC.  Plaintiff further argued
that the ALJ erred by failing to include limitations as
expressed by plaintiff's treating therapists in establishing her
RFC (Doc. 17 at 7), and that the ALJ did not give appropriate
weight to the medical evidence provided (Doc. 17 at 8).
Admittedly, plaintiff's brief did not discuss the specific
reasons given by the ALJ for discounting the opinions of LSCSW
Griggs and Mr. Mittal.  Nonetheless, based on the issue raised
by plaintiff (did the ALJ err by failing to include limitations
as expressed by plaintiff's treating therapists in establishing
her mental RFC), the question before the court is whether the
ALJ's reasons for not including the limitations of LSCSW Griggs
and Dr. Mittal are supported by substantial evidence.  This
would include all the reasons the ALJ gave for discounting the
opinion, including the ALJ's finding that the opinion does not
represent a medical source opinion from a treating source, i.e.,
Dr. Mittal.

In a letter dated November 12, 2014, signed by LSCSW Griggs
and Dr. Mittal, and submitted to the Appeals Council after the
ALJ decision (R. at 1-5, 761), they indicate that Dr. Mittal is
plaintiff's attending psychiatrist, and that plaintiff began her
treatment with Dr. Mittal on March 28, 2014.  The letter
indicates that LSCSW Griggs and Dr. Mittal have observed severe
level depression, anxiety, and anxious behaviors in plaintiff

(R. at 761).  The court must consider the qualifying new evidence submitted to the Appeals Council when evaluating the Commissioner's denial of benefits under the substantial evidence standard.  Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).  The court will examine both the ALJ's decision and the additional findings of the Appeals Council.  This is not to dispute that the ALJ's decision is the Commissioner's final decision, but rather to recognize that the Commissioner's "final decision" includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence.  O'Dell, 44 F.3d at 859.  The district court's very task is to determine whether the qualifying new evidence upsets the ALJ's disability determination, Martinez v. Astrue, 389 Fed. Appx. 866, 869 (10th Cir. Aug. 3, 2010), or whether the new evidence submitted to the Appeals Council provides a basis for changing the ALJ's decision.  Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

In fact, the treatment records, which were in the record at the time of the ALJ decision, include a March 28, 2014 medication evaluation signed by Dr. Mittal (R. at 688-695).  Dr. Mittal's mental health assessment included findings that plaintiff had racing and obsessive thoughts, was depressed, sad and anxious, displayed a loss of interest, and showed signs of

being helpless, sullen, withdrawn and anxious (R. at 692).  He gave her a GAF of 40 (R. at 694).  This GAF score indicates some impairment in reality testing or communication, or a major impairment in several areas, which could include being unable to work[2].  Thus, based on evidence that was before the ALJ at the time of her decision, there was evidence that Dr. Mittal treated and examined plaintiff, and in fact did provide opinions and insights regarding plaintiff's mental impairments and limitations.  The letter of November 12, 2014 confirms that Dr. Mittal was plaintiff's treating psychiatrist, and that the opinions expressed in June 2014 and November 2014 are those of both LSCSW Griggs and Dr. Mittal.  The ALJ clearly erred by not treating the June 2014 opinions as a medical source opinion from a treating source.  The case should therefore be remanded in order for the ALJ to consider the June 2014 opinions in light of the fact that Dr. Mittal was a treating psychiatrist and to further examine the medical record, including the March 28, 2014 medication evaluation.

---

[2] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders.  The scores in this case represent the following:

> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoid friends, neglects family, and is unable to work…).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

The ALJ also discounted the June 2014 mental RFC report because it offered opinions regarding plaintiff's ability to work at a consistent pace without an unreasonable number and length of rest periods. Inexplicably, the ALJ stated that the only possible basis for such a limitation is plaintiff's alleged physical impairments, and that evaluation of such impairments is outside Ms. Griggs' area of expertise and outside the scope of her treatment of the plaintiff (R. at 34). However, the court will take judicial notice of the fact that such a limitation has appeared on mental RFC forms in social security cases for over 20 years. In fact, this very question appeared on the forms filled out by Dr. Cohen and Dr. Bergmann-Harms (R. at 101, 117). Furthermore, the Social Security mental RFC form includes this very question in Question # 11. See http://ssaconnect.com/tfiles/SSA-4734-F4-SUP.pdf. This form is included in the Social Security Administration's Program Operations Manual System (POMS). See https://secure.ssa.gov/poms.nsf/lnx/0424510000. There is no basis for asserting that evaluation of this limitation is outside the scope of expertise or outside the scope of her treatment of the plaintiff by Dr. Mittal or LSCSW Griggs. In fact, such a question is specifically asked by the defendant on its own mental RFC forms. This finding by the ALJ is clearly erroneous.

On the facts of this case, these errors cannot be deemed harmless error. Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Had the ALJ properly considered this opinion evidence from Dr. Mittal and LSCSW Griggs, the court cannot confidently say that no reasonable factfinder could have resolved the factual matter in any other way. See Winick v. Colvin, 674 Fed. Appx. 816, 820 (10th Cir. Jan. 4, 2017; had the ALJ properly analyzed Dr. Ganzell's opinion as a treating rather than an examining physician's opinion, he would have been obligated to follow the procedure for weighing a treating physician opinion. The court cannot treat this error as harmless because to do so would ignore the ALJ's duties not only to determine whether to assign a treating physician's opinion controlling weight, but to give deference to a treating physician's opinion even if he does not assign it controlling

weight.  The exercise of such deference might have changed the relative weight assigned to all the medical opinions, including the non-examining consultants to whose opinions the ALJ assigned great weight.)

**IV. Did the ALJ err in finding that plaintiff required a sit/stand option allowing plaintiff to change position every 30 to 60 minutes?**

The ALJ's physical RFC findings stated that she would require a sit/stand option that would allow her to change positions every 30 to 60 minutes (R. at 27).  Dr. Hart had indicated in a letter dated March 14, 2014 that plaintiff would be unable to sit for prolonged periods of time as required in jury duty (R. at 760).  Although the ALJ only gave little weight to this opinion by Dr. Hart, the ALJ did credit some of plaintiff's allegations of pain, as she has a pain-causing impairment, and therefore included this limitation in the RFC findings (R. at 31).  No medical evidence in the record indicates that plaintiff requires a greater limitation in this area.  It is not even, on its face, inconsistent with the opinion of Dr. Hart that she cannot sit for prolonged periods of time.  The court finds no clear error by the ALJ in this RFC limitation.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 19th day of July 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge